This is a suit for compensation for total, permanent disability arising out of an alleged accident which the plaintiff claims caused him to sustain a right inguinal hernia.
Plaintiff was employed by the defendant and his work consisted of hard manual labor. He claims that on March 2, 1945, while he was engaged in the course and within the scope of his work, moving a large pipe with five or seven other employees, he felt a "scratch" across his side and that is the accident which he claims resulted in his alleged disability. He avers in his petition that he was earning wages of an amount sufficient for him to receive the maximum compensation of $20 per week, under the statute, but the testimony is that he received a little less than that and it is conceded in brief of his counsel that if he is entitled to recover he should be paid compensation at the rate of $18.20 per week.
[1, 2] All the essential facts alleged by plaintiff to bring his case within the provisions of our Workman's Compensation Law, Act 20 of 1914, and its amendments, except that he had an accident and suffered a hernia are not controverted and the defense seems to be based on two propositions: (1) That he did not have such an accident as he alleges and (2) that he had a hernia of previous standing at the same site as the one he presently suffers from before he ever was employed by the defendant and therefore the defendant is not answerable to him for compensation.
[1, 2] The defense of a previous hernia was not specifically urged in the original *Page 460 
answer filed by the defendant although there had been some suggestion of an operation which defendant would pay for to correct a hernia. On the day before the case was to be tried defendant filed a supplemental answer in which it is specifically set out that plaintiff had had a hernia before he went to work for the defendant and counsel for plaintiff then took issue with the granting of an order to allow the filing of that supplemental answer on the ground that it presented a new and different issue before the court and that it came too late. The district court granted the order permitting the filing of this supplemental answer and in this court counsel for plaintiff again takes issue on that point. Counsel properly protected the plaintiff's right after the ruling of the court and is no doubt privileged to raise the issue before this court. We cannot agree with their contention however and believe that the court was correct in permitting the supplemental answer to be filed.
In the first place it is none too positive that in its original answer defendant did not urge as a defense the issue of a previous hernia. True it is that the language of the answer is a bit confusing on this point but it strikes us that when, as seems to be now conceded by counsel for plaintiff, defendant expressed itself as being willing to have an operation performed upon the plaintiff to correct a hernia, at its expense, there is a necessary implication that the defendant must have meant that there was a hernia existing. In the second place, under the provisions of our compensation statute by which litigants are not held to the usual and technical and formal procedure, we think it is safe to say that the court was correct in permitting the filing of the supplemental answer. Counsel for plaintiff have cited numerous decisions in support of their point but they are all cases other than compensation suits and no doubt the court was correct in applying a stricter construction to the rules of pleading in those cases.
With that question disposed of we come now to the consideration of the trial of the case on the merits on which the trial judge apparently found himself in doubt as to whether the plaintiff had proved any accident which caused him to suffer anything at all and besides, held that if he did have any such accident that it did not produce the hernia which he now complains of as he already had a hernia; nor did it aggravate the hernia which already existed so as to produce disability under the statute.
This is one of those cases in which the plaintiff has no testimony but his own to show how the accident which he alleges happened. In his allegation he avers that he and some fellow employees were carrying a heavy piece of pipe; that he was attempting to step over some obstacle on the ground and about that time, he believes, one of his fellow employees who was helping to carry the pipe stumbled, throwing additional weight on him and that he himself stumbled, and due to the heavy load he was carrying he suddenly and severely strained himself. In describing the accident on the witness stand he says that he was called along with six or eight men to move this pipe and he and his partner were at the tail end. When the pipe was removed from an iron table he was standing a-straddle of another pipe lying on the ground and at this time he felt a "scratch" across his side which evidently he means was the strain that caused the hernia as, he says, after carrying it about 20 feet he walked down to the place where he had been working before and began to feel dizzy. He then walked over to the office and reported the accident and asked them to "write him up." On cross examination he gives the same account of the accident at first and later on talks about the pipe having slipped toward the ground and that is when he felt a "rake" across his side.
There is an obvious discrepancy between his allegation of the manner in which the accident happened and the way in which he described it as a witness. From the allegation one would be led to believe that in carrying this heavy pipe plaintiff stumbled and fell in an awkward position and that is what caused him to suffer this strain in his side. Apparently he was unable to produce any witnesses who saw either him or anybody else stumble, as he had alleged, and that may be why in testifying not only does he not say anything about stumbling *Page 461 
but admits himself that he did not slip although he says that the man helping him to carry the end of the pipe did stumble and that was what put the weight on him. No other witness however testified that they saw anyone stumble. There would therefore seem to be some reason to doubt that there was any such accident as the plaintiff sets out or one such as he testifies about unless, as held in some cases, there was some accompanying circumstance to corroborate the fact that he sustained an injury of some kind at about the same time. See Wherland v. Crowell Long Leaf Lumber Co. et al., recently decided and report-in in La. App., 26 So.2d at page 712.
Plaintiff testified that even after feeling a "scratch" in his side, as he described it, he carried the pipe some 20 feet further with his fellow employees. It was then that he began to feel dizzy and then went to the office and reported that he had hurt himself. Two witnesses testified that he told them also that he had hurt himself but do not pretend to have seen him when he says he did.
Plaintiff was sent to Dr. Charles H. Voss to whom he related an accident very much as the one set out in his petition. Dr. Voss examined him and did find a tenderness in the inguinal region which ordinarily, he says, is evidence of an injury caused by strain. We have to decide then whether the testimony of these two witnesses coupled with the fact that plaintiff was examined by Dr. Voss who found this tenderness in the inguinal region affords sufficient circumstantial proof to corroborate plaintiff's testimony about the accident. It would seem that a man who suffers an accident which is sufficiently severe to produce a hernia should be able to recall details a bit better than the plaintiff did in this case, but even then we are willing to give him the benefit of the doubt and to hold that probably he did strain in some manner which he cannot account for and that he did feel a stinging sensation at the site of this hernia. That however would still leave us with the important question whether or not plaintiff did have a pre-existing hernia to decide, and if he did have a hernia whether the accident he suffered was sufficient to aggravate the condition to such an extent that he is entitled to compensation on the ground that he has now become permanently and totally disabled to do work of any reasonable character.
In August, 1944, prior to his employment by the present defendant, plaintiff was working on some government job. He claims that he had an accident at that time and no doubt attempted to collect compensation on account of having sustained a hernia in the right side. He was examined by the doctor employed by the Government, Dr. J.F. Quinn who told him that he was ruptured. He was also examined by Dr. Voss who says that he found what he considered a small direct inguinal hernia. Dr. Voss states that the inguinal ring was not greatly dilated and there was no bulging through this ring. According to some text books, he says, that would not be classed as a hernia. Dr. Voss states that that is a matter of a difference of opinion among doctors but he felt at the time that the man had sufficient trouble and that it ought to be taken care of as it was his opinion that there was a positive small inguinal hernia. He recommended at the time that the plaintiff be operated on. He next saw plaintiff when he went back to him for an examination in March, 1945, at which time he says he was able to get his finger in the external inguinal ring and felt just about the same pulsation he had felt on his previous examination. It was the doctor's definite opinion, as stated by him, that plaintiff had just as large a hernia at that time as he had before when he had examined him the previous September.
The only evidence in the record to rebut in any way Dr. Voss' testimony of a hernia existing before comes from a letter written out of some department in Washington which handles government compensation claims such as the plaintiff had presented when he was hurt on his previous job. This letter indicates that plaintiff did go to some government hospital after Dr. Voss had recommended an operation and was kept under observation for some time, after which it was decided that he did not need any operation because, presumably, he had no hernia. *Page 462 
[3] The offering of this letter as evidence was objected to on the ground that there was no proof of signature by the man who purportedly had signed it. Counsel for plaintiff made the point that under a regulation of some government agency in such matters, Dr. Quinn should not have been permitted to testify and he urges that since his testimony had been taken this letter should also be considered and admitted in evidence. Dr. Quinn's testimony is in the record and so is the letter referred to which apparently seems to be official, and if from all that evidence any facts appear which are pertinent to the case and will aid the court in a proper decision, they should all be considered as again we might recall that we are here dealing with a compensation case in which by the terms of the statute itself the technical and common law rules of evidence are relaxed.
Therefore, as against Dr. Quinn's testimony and Dr. Voss' also who both positively state that this man had a hernia, no matter how advanced it was, we have a letter written by someone in a government office in Washington saying that plaintiff was not entitled to compensation because from the hospital records it had been determined that he had no hernia. And right there may be said to appear that difference of opinion among doctors which Dr. Voss referred to as to what is really called a hernia in the medical profession. It may well be that these doctors in the hospital belong to that class who hold that the ring not having been sufficiently dilated the hernia was still in its incipient stages and no operation was indicated. We must bear in mind however that Dr. Voss thought otherwise since he recommended an operation.
A point is made now by counsel for plaintiff that in the interval between the examination by Dr. Voss and Dr. Quinn in the summer of 1944 and the time the hospital found that he had no hernia, nature may have taken care of the situation and a cure had become effected. There is some medical testimony in the record to bear out such a possibility as the correcting of a hernia by nature, assuming that the patient takes care of himself, resting plentifully, and applying some kind of pad to the injured area. Other doctors testified that they know of no such cures happening and still others say that it may be possible in very young children whose muscles and tendons grow stronger as they get older. At any rate we are satisfied with what testimony there is in the record that no such cure took place in this plaintiff's case and we are strongly inclined to agree with Dr. Voss, who impresses us as being well informed in cases of this kind, that the condition he found on examining plaintiff in March, 1945, was the same as he found when he examined him in September, 1944.
Dr. J.R. Godfrey who also endeavored to give the court the benefit of all his knowledge on this subject seems to agree with Dr. Voss. The case seemed to have been what he calls a border line one when he examined plaintiff on May 31, 1945. He had examined him at the request of counsel for defendant, and it is noted in his report that he used the words that plaintiff had an early hernia or an early possible hernia. (Our emphasis.) He explains in his testimony that the word "early" was not well chosen in this instance and that he should have said he had a very slight hernia instead, and a very slight hernia, he adds, could exist for years. He however would not comment on how recent or what its origin was in this case as, he says, the age of a hernia cannot be detected in any way that he knows of unless the original soreness or sensitiveness leaves it, and, he adds rather significantly, "there was no soreness to speak of in this man's case at the time I examined him."
[4] We find therefore that the preponderance of the testimony is that this plaintiff had a hernia when he was examined by the doctors in August or September, 1944, and that the hernia he had when he was again examined in March and. May, 1945, was the same hernia that he had been having.
Counsel for plaintiff have culled a statement from Sec. 9, Par. 2 of the compensation statute which they now urge has made out a prima facie case against the defendant upon which the plaintiff is bound to succeed unless the defendant has been able to carry the burden of proof which has now shifted to it. *Page 463 
That particular provision of the statute has reference to the medical reports given in compensation cases. After an injured employee has been examined by his own and by the employer's doctor, there is a reciprocal duty on each to furnish the other with a copy. Upon receipt by either party of such report from the other, the party receiving it, if he disputes any statement in it, shall notify the other party within six days, otherwise such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under the statute. Availing themselves of that provision and using the report made by Dr. Voss, counsel for plaintiff have taken one statement contained therein on which to base their argument. In the report of Dr. Voss there is a statement that the plaintiff had hurt himself lifting a piece of pipe; that he had a hernia on the right side and, in effect, the injury was compensable. Further, in answer to the question whether plaintiff was able to continue working, the answer contained in the report is "No." On these statements counsel would have the court hold that plaintiff has made out a prima facie case for compensation against this defendant.
Granting the plaintiff the advantage which counsel claim for him under this provision of the statute, it is, in our opinion, of no service to him as any presumption which may have been created thereunder in his favor has been rebutted by the testimony which is otherwise found in the 'record. It is on the preponderance of the testimony adduced by the defendant that we hold that the hernia which plaintiff had in March, 1945 was the same hernia, he had when he was working for another employer in August, 1944, and if it is the same hernia, it is not compensable at the instance of the present defendant, unless there has been an aggravation of the condition.
With regard to any aggravation we do not find any evidence which would justify us in holding the plaintiff's hernia and the resulting condition is any worse than it was in 1944 even though we concede that he had the slight accident which he described as having occurred on March 1945 at which time he says he felt a "scratch" in his side. On the contrary Dr. Voss who admits he found a tenderness at the time he examined him in March, 1945, states positively that he felt the same pulsation that he had felt the year previous and that the hernia was as large as it was when he examined him at that time. Asked the direct question if there had been an advance of it, meaning an advancement of the small sac through the external ring, he says that there was none that he could detect.
A supplemental brief just filed by counsel for plaintiff directs our attention to the case of Hogan v. T. J. Moss Tie Co. et al., recently reviewed by the Supreme Court and reported in 27 So.2d at pages 131, 133.
Counsel stress the point that in that case the Supreme Court, in holding that the accident which plaintiff claimed was the cause of his inability to further perform hard manual labor of a reasonable character, assigned as one of its reasons the fact that he "had been performing hard manual labor for sometime before and up to the time of the accident and since the accident he has been unable to do so." In the present case by plaintiff's own testimony it is shown that "a month or two" after the accident he complains of, he accepted employment as a truck driver hauling lumber from Livingston to Kenner, Louisiana, earning "around $40.00 a week" and at the time of the trial of his case, several months later, he was still doing that same kind of work. In our opinion, driving a lumber truck is as strenuous work as that of a welder's helper or a pipe fitter's helper which plaintiff was engaged in when he worked for defendant and the force of the decision in the cited case is not applicable.
Our conclusion, after giving this case serious study, is that the trial judge properly resolved the facts in favor of the defendant.
No manifest error appearing in the judgment rendered, it will be affirmed.
Judgment affirmed at the cost of plaintiff, appellant. *Page 464